# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MICHAEL HYDE | ) |  |
|   Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 04-12429-RWZ |
|  | ) |  |
| STATE OF MASSACHUSETTS ET AL., | ) |  |
|   Defendants. | ) |  |
|  | ) |  |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF
### MOTION TO DISMISS

The defendants[1] submit this memorandum in support of their motion to dismiss the above-captioned civil rights action for failure to state a claim upon which relief under 42 U.S.C. § 1983 can be granted. Fed. R. Civ. P. 12(b)(6).

The pro se plaintiff, Michael Hyde, pled guilty to wiretapping violations in state court and received two years probation. In filing this civil rights action against state officials, police officers, prosecutors and judges, he has failed to fulfill the condition precedent established by *Heck v. Humphrey*, 512 U.S. 477 (1994), for pursuing a civil rights suit. Under *Heck*, if the sentence or conviction under challenge has not been invalidated, the claim is not cognizable under § 1983. *Heck*, 512 U.S. at 486-87.

Although *Heck* is dispositive of the action, other defenses also exist including judicial, prosecutorial and Eleventh Amendment immunity. For all these reasons, as

---

[1] In this action the Attorney General's office represents the Commonwealth of Massachusetts, Clerk-Magistrate Salvatore Paterna, Dedham District Court Thomas Connors, Norfolk County District Attorney William R. Keating, Assistant District Attorneys Jason Bolio and Max Pearlman, Massachusetts State Police Lab Director Carl Selavka, CODIS Administrator Bob Pino, Public Safety Commissioner Edward A. Flynn, Attorney General Thomas F. Reilly and Governor Mitt Romney.

**2**

explained more fully below,  the action should be dismissed.

## STATEMENT OF THE CASE

According to the complaint[2] Michael Hyde ("the plaintiff ") was prosecuted by the

Norfolk County District Attorney's office for violation of the wiretapping statute , G. L. c.

272, § 99(C)(1), for tape recording law enforcement officers during a routine traffic stop.[3]

(Exhs. 1-5).  In a motion to suppress, he unsuccessfully challenged the validity of the stop

and seizure including the State Trooper's order to exit the motor vehicle; the validity of the

search of the driver's side front seat area and seizure of a running tape recorder from a

shelf below the steering wheel; and the validity the State Trooper's actions in playing a

tape recording without first obtaining a search warrant.  (Exh. 5 at 7).  In Findings of Fact

and Rulings of Law, the motion judge rejected the plaintiff's position, noting that the police

stop was proper and the plaintiff's own suspicious actions warranted the Trooper's further

---

[2] On August 17, 2005, the plaintiff was ordered to file a more definite statement of
the legal and factual grounds of his action by September 1, 2005.  On September 6, the
defendants' counsel received a revised complaint which still had the annotation on the
front page reading "1st Amended Complaint March 10 2005."  Notwithstanding the title,
references in the Memorandum are to the revised complaint.

The complaint continues to violate the basis rules of simple pleading since it is still a
confusing 36-page narrative of gripes and cryptic legal allusions, now double spaced with
numerals.  It is still impossible to properly answer the complaint.  However,  in the interest
of judicial economy,  the defendants are filing the instant motion to dismiss on *Heck* and
other grounds which will dispose of the case even if the claims lack clarity.  There exists
more defenses available which the defendants are not waiving through the filing of this
motion.  In the event that the motion to dismiss is denied, the defendants reserve the right
to assert further defenses should that course become necessary.

[3] The facts contained in this memorandum are drawn from the complaint, official
public records, documents central to the plaintiff's claim or sufficiently referred to in the
complaint.  *Watterson v. Page,* 987 F.2d 1 (1st Cir. 1993).  All factual assertions are
contained in matters of record filed in Norfolk County Superior Court in connection with
the plaintiff's criminal proceedings and are appended to this memorandum as Exhibits.

3

actions. (Exh. 5 at 7-11).   Hyde eventually pled guilty to the charge and was sentenced to

two years on probation.  (Exh. 1-2, 4).  No appeal followed.  In the complaint at bar, the

plaintiff alleges that various state officials, including the Governor and Attorney General of

Massachusetts as well as judicial, prosecutorial and law enforcement officers, abridged his

civil rights  through his arrest and prosecution.  He alleges that his arrest and prosecution

for tape recording the police stop was *per se* a violation of his constitutional rights and that

his property rights were also infringed by law enforcement officials when they obtained

fingerprint, photographic and DNA personal information from him for identification

purposes after his arrest and guilty plea.[4]  Hyde claims that the defendants violated 42

U.S.C. § 1983 as well as other federal statutes including, but not limited to, trade secret and

copyright infringement laws.  (Complaint at 5-8 ).  He asks for the return of DNA samples,

fingerprint cards and photos which the Commonwealth obtained in the course of his arrest

and prosecution and the dropping of all civil and criminal charges from his record

(Complaint at  35).  He also seeks damages in excess of $ 115 million dollars and attorney

and expert fees.  (Complaint at 35-36).

---

[4]  Section 3 of G.L. c. 22E requires that any person who is convicted of an offense
that is punishable by imprisonment in the state prison shall submit a DNA sample to
Department of Public Safety within one year of such conviction.  Violation of the
wiretapping stature is punishable by imprisonment in state prison of not more than five
years or in the house of correction for not more than 2 ½ years or not more than a $10,000
fine or both such imprisonment or fine.

4

## ARGUMENT

**I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE PLAINTIFF HAS NOT FULFILLED THE CONDITION PRECEDENT TO SUIT  UNDER 42 U.S.C. § 1983 IMPOSED BY *HECK V. HUMPHREY*, 512 U.S. 477 (1994).**

A claim under 42 U.S.C. § 1983 that is based on "an unconstitutional conviction or

sentence does not accrue until the conviction or sentence has been invalidated." *Heck v.*

*Humphrey*, 512 U.S. 477, 489-90 (1994). Accordingly, the Supreme Court held in *Heck* that

> in order to recover damages for an allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by
> actions whose unlawfulness would render a conviction or
> sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal,
> expunged by executive order, declared invalid by a state
> tribunal authorized to make such determination, or called into
> question by a federal court's issuance of a writ of habeas
> corpus, 28 U.S.C. § 2254.

*Id.* at 486-87 (footnote omitted); *accord Edwards v. Balisok*, 520 U.S. 641, 643 (1997);

*Figueroa v. Rivera*, 147 F.3d 77 (1st Cir. 1998).  If the sentence or conviction has not been

invalidated, the claim is not cognizable under § 1983.  *Heck,* 512 U.S. at 486-87.

Any challenge to the legality of a conviction and sentence imposed in state criminal

proceedings must be brought in a 28 U.S.C. § 2254 habeas corpus petition, with its

attendant requirement of exhaustion of state remedies.  *Preiser v. Rodriguez*, 411 U.S. 475,

n. 14 (1973).  Where habeas relief is available, a prisoner does not have a cause of action

under another form of relief that would invalidate the underlying judgment or order that

produced the confinement.  In *Heck* , the Supreme Court made clear that 42 U.S.C. § 1983

is not available for defendants who claim an unconstitutional violation of civil rights where

the claim would essentially invalidate the underlying conviction and sentence.  Hyde is

5

attacking the underlying constitutionality of his conviction under the wiretapping statute and thus must first pass through the *Heck* threshold before asserting this claim.

Hyde's conviction has not been reversed, overturned or otherwise terminated in his favor. His sentence of probation is a criminal "sentence" subject to *Heck*. As the Supreme Court explained in *Griffin v. Wisconsin*, 483 U.S. 868 (1987):

> [p]robation, like incarceration, is 'a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty.... [It] is simply one point (or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service.

*Id.* at 874 (citations omitted).

Finally, while the plaintiff in *Heck* sought monetary damages, the *Heck* bar applies equally to claims for equitable relief, such as injunctions. *See Harvey v. Horan*, 278 F.3d 370, 375 (4th Cir. 2002); *see also White v. Gittens*, 121 F.3d 803, 806 (1st Cir. 1997) (applying *Heck* to claim for declaratory relief); *Martinez v. Texas Court of Criminal Appeals*, 292 F.3d 417, 423 (5th Cir.), *cert. denied*, 122 S. Ct. 1992 (2002) (§ 1983 plaintiffs sought an injunction prohibiting the state from appointing incompetent counsel to death row inmates; plaintiffs' claims were not actionable under § 1983 because a judgment in the plaintiffs' favor was likely to "effectively determine the validity of their death sentences").

Because Hyde is seeking precisely what *Heck* prohibits – a judgment that would invalidate his conviction and sentence –his § 1983 claims are not cognizable. *See, e.g., Heck*, 512 U.S. at 486-87, 490. His complaint against the defendants therefore should be dismissed.

6

II.     **HYDE'S SUIT AGAINST THE STATE OF MASSACHUSETTS, GOVERNOR ROMNEY, ATTORNEY GENERAL REILLY , PUBLIC SAFETYCOMMISSIONER FLYNN, STATE POLICE CRIME LAB DIRECTOR SELAVKA AND LAB ADMINISTRATOR PINO IS BARRED BY THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of an Foreign State.

U.S. Const. Amend. XI.  By its own terms, the Amendment encompasses only suits brought against a state by citizens of another state, but it has long been established that the Amendment also bars suits against a state brought by citizens of the same state.  *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Edelman v. Jordan*, 415 U.S. 651 (1974).  This bar exists whether the relief sought is legal or equitable.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984).  It applies to both civil rights claims brought under 42 U.S.C. § 1983 and pendent state claims.  *Id.* at 101.  *See also Quern v. Jordan*, 440 U.S. 332, 346 (1979) (§ 1983 does not override states' Eleventh Amendment immunity).

The plaintiff's claim against the State of Massachusetts is plainly barred under the Eleventh Amendment.  Moreover, a suit against an officer of the Commonwealth in his official capacity is the same as a suit against the Commonwealth and therefore also is proscribed by the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  As the Supreme Court explained in *Graham*,  an "official-capacity suit"

> represents only another way of pleading an action against an entity of which an officer is an agent. . . .  It is not a suit against the official personally, for the real party in interest is the entity.

*Id.* at 165-66 (internal citations and quotations omitted).  *See also Brandon v. Holt*, 469 U.S. 464, 471-72 (1985) (a suit brought against an officer of a governmental entity in his official capacity is a suit against the governmental entity).

7

In this case, Hyde names Governor Romney, Attorney General Reilly, Public Safety Commissioner Flynn, State Police Lab Director Selavka and Adminstrator Pino purely in their official capacities as heads of various state agencies. (Complaint at 4-5). He does not allege that these public officials were in any way personally involved in his arrest, prosecution or collection of identifying information. Because Hyde sued these defendants solely in their capacity as a state officers, his entire lawsuit against them is barred by the Eleventh Amendment. *Pennhurst*, 465 U. S. at 101-102. *See also Graham*, 473 U.S. at 169-70 (§ 1983 lawsuit against state police commissioner in his official capacity was equivalent to a suit against the state and therefore barred by Eleventh Amendment). [5]

III.    **HYDE'S COMPLAINT AGAINST GOVERNOR ROMNEY, ATTORNEY GENERAL REILLY , PUBLIC SAFETY COMMISSIONER FLYNN, STATE POLICE CRIME LAB DIRECTOR SELAVKA AND LAB ADMINISTRATOR PINO MUST BE DISMISSED BECAUSE STATE OFFICIALS ARE NOT "PERSONS" UNDER 42 U.S.C. § 1983**.

Title 42, section 1983 creates a cause of action against "every *person*," who,

> under color of [state law], subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added).

It is settled law that neither states, nor state officials acting in their official capacity, are considered "persons" within the meaning of 42 U.S.C. § 1983. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65 (1989). As a result, "[n]either a State nor its officials acting in their official capacities" are subject to

---

[5] Neither may Hyde sue the state officers in their personal capacity because federal civil rights claims cannot be based on the doctrine of *respondeat superior*. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 & n.58 (1978); *Lyons v. Nat'l Car Rental Sys.*, 30 F.3d 240, 246 (1st Cir. 1994) (42 U.S.C. § 1983 is limited to "actual wrongdoers"; cannot assert § 1983 claims on the basis of *respondeat superior* or other theories of vicarious liability).

8

suit under § 1983. *Id. See also Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991), *cert. denied*, 502 U.S. 1063 (1992); *Elliot v. Cheshire County*, 940 F.2d 7, 12 (1st Cir. 1991) (state trooper could not be sued under § 1983; he is an "arm of the state" and a state is not a "person" under § 1983).

As already discussed, Hyde sued the state officials solely in their official capacity as the heads of a Massachusetts departments or agencies. Because the federal civil rights statute does not permit suits against a state official acting in his official capacity – the precise landscape of this lawsuit – the complaint should be dismissed against the state officials. *Hafer*, 502 U.S. at 27 (state officers sued in their official capacity "are not 'persons' for purposes of the [§ 1983] suit").

II.   **THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE JUDICIAL AND PROSECUTORIAL DEFENDANTS ARE IMMUNE FROM SUIT UNDER THE CIVIL RIGHTS LAW.**

The plaintiff has alleged violation of his rights by several categories of state officials connected with judicial proceedings involving the plaintiff. These officials enjoy absolute immunity from suit under well-established principles of law. *See Buckley v. Fitzsimmons*, 509 U. S. __, 113 S. Ct. 2606, 2613 (1993), and cases cited. To determine whether a particular government official fits within the common law tradition of absolute immunity, or the more general standard of qualified immunity, the court must apply a "functional approach," *see Burns v. Reed*, 500 U. S. 478, 484-487 (1991), which looks to the "nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 113 S. Ct. at 2613, *quoting Forrester v. White*, 484 U. S. 219, 229 (1988). *See Antoine v. Byers*, 508 U. S. __, 113 S. Ct. 2167, 2171 (1993); *Harlow v. Fitzgerald*, 457 U. S. 800, 810 (1982). When a government official is protected by absolute immunity, that protection is not eroded no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive. *Cleavinger v. Saxner*, 474 U. S. 193, 199-200 (1985); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989). *See*

9

*Dennis v. Sparks*, 449 U. S. 24, 31 (1980) (allegations of malice or bad faith in the execution of the officer's duties are insufficient to sustain the complaint when the officer possesses absolute immunity).  In *Butz v. Economou*, 438 U. S. 478, 512 (1978), the Supreme Court announced the following factors as characteristic of the judicial process that should be considered in determining whether absolute or qualified immunity applies.  They are:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctibility of error on appeal.

*Id.  See Cleavinger v. Saxner*, 474 U. S. at 201-202.  Once the defense of immunity is raised, the plaintiff has the burden to prove, with specific facts, that such protection does not apply to the defendants' conduct.  *Mitchell v. Forsyth*, 472 U. S. 511, 526 (1985); *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987).  The relevant immunities of the several defendants are described below.

### 1.    THE DISTRICT COURT JUDGE

The plaintiff alleges that Dedham District Court Judge Thomas Connors violated his civil rights during the course of a guilty plea hearing.  (Complaint at 12).  Hyde claims that he was under extreme duress at the plea hearing since the district attorney's office was asking for jail time and he was forced - with the potential threat of losing his freedom- to agree to probation and that Judge Connors knew of the alleged "coercion." [6] (Complaint at 12).  Judge Connors is entitled to absolute immunity.  "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U. S. 547, 553 (1967).  In *Pierson*, the Court held that the judiciary was immune from suits for damages under

---

[6] The plaintiff has never moved to withdraw his guilty plea on voluntariness grounds via a motion for a new trial pursuant to Mass. R. Crim. P. 30 which is the usual route for challenging a plea.

10

§ 1983.  Although the rationale for such a strict rule is clear, it bears repeating.  In deciding

that judicial immunity applies to § 1983 cases, the Court stated that judicial immunity:

> applies even when the judge is accused of acting maliciously and corruptly,
> and it is not for the protection or benefit of a malicious or corrupt judge, but
> for the benefit of the public whose interest it is that judges should be at
> liberty to exercise their functions with independence and without fear of
> consequences.  It is a judge's duty to decide all cases within his jurisdiction
> that are brought before him including controversial cases that arouse the
> most intense feelings in the litigants.  His errors may be corrected on appeal,
> but he should not have to fear that unsatisfied litigants may hound him with
> litigation charging malice or corruption.  Imposing such a burden on judges
> would contribute not to principled and fearless decision-making, but to
> intimidation.

*Pierson v. Ray*, 386 U. S. at 553-554 (citations and internal quotations omitted).  *See Mirales

v. Waco*, 502 U. S. 9, 11 (1991) (judicial immunity is not overcome by allegations of bad

faith or malice).  Judicial immunity is an immunity from suit, not just from an ultimate

assessment of damages.  *Id.*; *Mitchell v. Forsyth*, 472 U. S. at 526.  A judge's immunity can

be overcome in only two sets of circumstances.  "First, a judge is not immune from liability

for nonjudicial actions, *i.e.*, action not taken in the judge's judicial capacity.  Second, a

judge is not immune for actions, though judicial in nature, taken in the complete absence of

all jurisdiction."  *Mirales v. Waco*, 502 U. S. at 11-12.  "[W]hether an act is a `judicial' one

relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a

judge, and to the expectation of the parties, *i.e.*, whether they dealt with the judge in his

judicial capacity."  *Id.* at 12, *quoting Stump v. Sparkman*, 435 U. S. 349, 362 (1978).

As stated by the Court in *Pierson v. Ray*, 386 U. S. at 554, "even when the judge is

accused of acting maliciously and corruptly" he is immune from liability.  The language of

*Pierson* suggests that judicial immunity extends only to judges' acts "within their judicial

jurisdiction."  *Id.*  However, in order to be divested of immunity on jurisdictional grounds,

a judge must have acted with a "clear absence of all jurisdiction over the subject-matter."

*Bradley v. Fisher*, 13 Wall. 335, 351 (1872); *Stump v. Sparkman*, 435 U. S. at 359.

The plaintiff did not claim, nor could he, that the defendant judge was not acting in

11

a judicial capacity or in the absence of jurisdiction.  *See Mirales v. Waco*, 502 U. S. at 11-12.

Indeed, the allegations specifically relate to functions normally performed by judges, or to

instances where the plaintiff, and others, "dealt with the judge in his judicial capacity."  *Id.*

at 12.  *See Forrester v. White*, 484 U. S. at 227-229.  Accordingly, the complaint against the

judge should be dismissed.

    2.    *THE CLERK-MAGISTRATE*

      The plaintiff has named Salvatore Paterna, Clerk-Magistrate of the Dedham

District Court as a defendant.  The clerk-magistrate is also entitled to absolute immunity

under well-established principles of law.  The named clerk-magistrate was a pure judicial

officer whose duties were both the execution of actions taken by the court and certain

independent judicial actions within his powers as a clerk-magistrate.  Here, the plaintiff

alleged that the clerk-magistrate handled "much if not all " of his wiretapping complaint

thereby violating his civil rights.  (Complaint at 3).  Absolute judicial immunity extends to

this allegation against the clerk-magistrate.

      It is well established that judges and other court officials enjoy absolute immunity

from suits based on claims arising out of the performance of judicial or quasi-judicial

functions.  *Pierson v. Ray*, 386 U. S. at 553-554; *Imbler v. Pachtman*, 424 U. S. 409, 427-431

(1976).  As a judicial officer a clerk-magistrate is called upon to consider and decide

questions of law and fact in cases and controversies before the court.[7]  In performing this

---

    [7] For example, pursuant to G. L. c. 221, § 62C, a clerk/magistrate is authorized to
perform several judicial functions as allowed by the court:
    (a) to grant continuances;
    (b) to hear and rule on uncontested non-evidentiary motions;
    (c) to call pre-trial conferences;
    (d) to mediate certain small-claims actions;
    (e) to hold hearings on civil motor vehicle infractions;
    (f) to review orders to restrain or dispose of dangerous dogs;
    (g) to hold preliminary hearings on probation violations; and
    (h) to set bail when a justice is unavailable.

12

duty, the clerk-magistrate is a pure judicial officer who shares absolute immunity. *Pierson v. Ray*, 386 U. S. at 553; *Bradley v. Fisher*, 13 Wall. at 351. *Sparkman*, 435 U. S. at 363 n. 12. *See Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980) (court clerks enjoy absolute immunity), *citing Slotnick v. Stravinsky*, 560 F.2d 31, 32 (1st Cir. 1977), *cert. denied*, 434 U. S. 1077 (1978).

In *Sullivan v. Kelleher*, 405 F.2d 486 (1st Cir. 1968), the First Circuit held that the defendant clerk of court who entered a default judgment evicting the plaintiff from his residence could not be held liable for any defects in service of process. "[S]ince the immunity accorded to judges extends to other officers of the government whose duties are related to the judicial process,' *Barr v. Matteo*, 360 U. S. 564, 569 (1959), it follows that the instant clerk-magistrate cannot be held personally liable." *Sullivan v. Kelleher*, 405 F.2d at 487; *Sindram v. Suda*, 986 F.2d 1459 (D.C. Cir. 1993). Numerous Circuit Courts of Appeal have accorded absolute immunity to clerks. *See e.g., Sindram v. Suda*, 986 F.2d 1459, 1460-1461 (D.C. Cir. 1993); *Boyer v. County of Washington*, 971 F.2d at 102; *White By Swafford v. Gerbitz*, 892 F.2d 457, 463-464 (6th Cir. 1989); *Foster v. Walsh*, 864 F.2d at 418; *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988); *Mullis v. U. S. Bankruptcy Court, Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987), *cert. denied*, 486 U. S. 1040 (1988); *Scott v. Dixon*, 720 F.2d at 1546-1547. *See also Sharma v. Stevas*, 790 F.2d 1486 (9th Cir. 1986) (Clerk of the United States Supreme Court had absolute immunity under Federal Torts Claim Act because his acts were an integral part of the judicial process). Clerks share the immunity of judges, which requires that they not be called upon to litigate suits for damages. *See Kermit Construction Corp. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976) (a nonjudicial officer who is delegated duties in aid of the court should not be "a lightening rod for harassing litigation aimed" at the court). Therefore, the complaint

against the clerk-magistrate should be dismissed.

        **3.  *THE DISTRICT ATTORNEY AND ASSISTANT DISTRICT ATTORNEYS***

        The plaintiff named three Massachusetts prosecutors, District Attorney Keating and Assistant District Attorneys Bolio and Pearlman, as defendants.  The named prosecutors are absolutely immune from suit for any actions they may have taken "in initiating a prosecution and in presenting the State's case."  *Imbler v. Pachtman*, 424 U. S. at 431.  This absolute immunity extends to actions apart from the courtroom which are within the prosecutor's function as an advocate.  *Id.*; *Buckley v. Fitzsimmons*, 113 S. Ct. at 2615.  Absolute immunity for prosecutors is, as it is for judges, necessary to protect the judicial process.  *Burns v. Reed*, 500 U. S. at 485; *Imbler v. Pachtman*, 424 U. S. at 422-423.  Without such protection, "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust."  *Burns v. Reed*, 500 U. S. at 485, *quoting Imbler v. Pachtman*, 424 U. S. at 423.  *See also Andersen v. Bishop*, 304 Mass. 396, 400, 23 N.E.2d 1003 (1939) (the public interest requires absolute immunity for prosecutors to insure "zealous and fearless administration of the law").

        In *Imbler*, the plaintiff brought a civil rights action pursuant to 42 U.S.C. § 1983 which alleged that the prosecutor defendant intentionally allowed a witness to give false testimony which led to the plaintiff 's indictment.  *Imbler v. Pachtman*, 424 U. S. at 431.  The Supreme Court held that a state prosecutor had absolute immunity for the initiation and pursuit of a criminal prosecution.  The acts undertaken by a prosecutor in the initiation of a criminal prosecution which occur in the course of his role as an advocate of the State, including the presentation of the State's case at a probable cause hearing, before a grand jury, or at trial, are entitled to the protections of the absolute immunity.  *Buckley v. Fitzsimmons*, 113 S. Ct. at 2615; *Imbler v. Pachtman*, 424 U. S. at 431.  *See Burns v. Reed*,

14

500 U. S. at 487-488 (prosecutor absolutely immune for eliciting misleading testimony from a witness at a probable cause hearing).  The *Imbler* Court noted that at common law prosecutors were immune from suits which alleged the knowing use of false testimony before the grand jury and at trial.  *Imbler v. Pachtman*, 424 U. S. at 421-424, 426 n. 23.  The interest supporting the common law immunity were held to be equally applicable to suits under § 1983.  *Id.* at 422-423.  *See Yaselli v. Go*ff, 12 F.2d 396 (1926), *a*ff*'d*, 275 U. S. 503 (1927) (prosecutor immune from liability for claim that he procured plaintiff 's indictment by the willful introduction of false and misleading evidence).  *Cf. Briscoe v. LaHue*, 460 U. S. 325, 332 (1983) (police officer witness alleged to have given perjured testimony at plaintiff's trial was entitled to absolute immunity even where witness knew the statements were false and made them with malice).

The allegations against the prosecutors named as defendants centered on the prosecutors' roles as advocates, and so cannot be the basis for a civil rights action.  *See also Buckley v. Fitzsimmons*, 113 S. Ct. at 2612 n. 3 ("prosecutors are entitled to absolute immunity for actions as advocates before the grand jury and at trial even if they present unreliable or wholly fictitious proofs"); *Burns v. Reed*, 500 U. S. at 489-490 (prosecutor enjoyed absolute immunity for making false or defamatory statements, or for eliciting false and defamatory testimony from witnesses, in judicial proceeding); *Imbler v. Pachtman*, 424 U. S. at 430-431 (prosecutor entitled to absolute immunity for knowing use of false evidence at trial and for suppression of exculpatory evidence); *Reid v. State of New Hampshire*, 56 F.3d 332, 336-338 (1st Cir. 1995) (prosecutors entitled to absolute immunity for knowing suppression and delayed disclosure of exculpatory evidence and for misleading the court to conceal their misconduct); *Siano v. Justices of Massachusetts*, 698 F.3d 52, 58 (1st Cir. 1983) (district attorney was immune from suit even when he instituted a prosecution in bad faith for the purpose of retaliation against plaintiff).  Therefore, the complaint against the prosecutors should be dismissed.

15

## CONCLUSION

For the above-stated reasons, the complaint should be dismissed against all the defendants.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

/s/ Annette C. Benedetto
Annette C. Benedetto
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200
BBO No. 037060

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the following persons by first-class mail, postage pre-paid, on September 30, 2005, addressed as follows:

Plaintiff

Michael J. Hyde
148 Brickel Rd.
Stoughton, MA 02072

Counsel for Defendants Paul Baker and Rachael Ruthier

Scott Dunlap
Law Offices of Timothy M. Burke
160 Gould Street
Suite 111
Needham, MA 02494

/s/ Annette C. Benedetto
Annette C. Benedetto
Assistant Attorney General